## THE HERCULES.

## THE MARY LOUISE.

## THE IMPERATOR.

### (District Court, E. D. Pennsylvania. June 30, 1896.)

### No. 41 of 1894.

NEGLIGENT TOWAGE—INJURY TO THIRD VESSEL—LIABILITY OF TUGS.

Tugs towing a steamship to a wharf at which another ship was lying, and forcing her in between the latter and the dock, while the latter was attempting to comply with the dock owner's order to move out of the way, *held* liable for damages to her from grounding, in consequence of being forced past the end of the pier before she could be made fast.

This was a libel by the owners of the ship Cashier against the tugs Imperator, Mary Louise, and Hercules to recover damages incurred in being forcibly pushed away from a pier, so that she went aground.

John F. Lewis and Horace L. Cheyney, for libelant.

Henry R. Edmunds, for respondents.

BUTLER, District Judge. On May 24, 1894, while the libelant was lying attached to a dock at Marcus Hook, awaiting a promised cargo, the respondents, having the steamship Bremerhaven in tow, brought her there to load. The libelant was ordered away by the wharf owners, to allow the steamship to occupy her place. She endeavored to move down to an ice pier a short distance below, by slackening her lines and drifting with the tide. While she was engaged in this endeavor and before it could be executed, the respondents, against her earnest protest, ran the steamship in between her and the wharf, striking her rear line, attached astern, and forcing her forward. This line was then detached from the wharf by the respondents' order as is charged, the stem being allowed to swing rapidly downwards, while the forward line remained fast. The respondents continued their course with the tow, forcing it against the libelant's upper side, as is charged, thus increasing the momentum of her stern, and swinging her past the pier with such rapidity that those on board were unable to avoid the grounding which ensued, by attaching a line to the pier, although they endeavored to do so. While it is denied that the libelant sustained injury, as she charges, there is evidence to support the charge, and the question will not be considered at present.

Were the respondents in fault? They had nothing to do with ordering the libelant away from her berth; and it was her duty to go when ordered. She was, however, entitled to sufficient time to do so with safety; and even if she had been tardy in this respect, it would not have justified the respondents in forcing the steamship in as they did. The libelant's only substantial ground of complaint is stated in her brief as follows:

"While the stern line of the Cashier was being properly slacked on board the ship, and she was drifting down with the ebb tide, the tugs docking the Bremerhaven without waiting until the ship was safely moored to the ice pier, or until the stern line was cast off, and in utter disregard of the

safety of the ship, pushed the Bremerhaven in between the Cashier and the oil wharf, and forced her against the wire hawser of the Cashier which was out astern. When the steamship struck the hawser an order was given from the bridge of the Bremerhaven, to cast it off. This order was repeated on the forecastle of the steamship evidently by the master of the Imperator, who was stationed there. Acting under this order, the stern line of the ship was cast off by some one ashore, and she drifted down with the ebb tide, without control over her movements. The tugs continued to force or push the steamship in between the Cashier and the wharf, and the steamship finally struck the Cashier with considerable force, on the starboard side, just abaft of the forerigging. The ship then being adrift, the ebb tide and the momentum given by the steamship in striking her and her stern line, forced her forward, and she struck the pier on her port quarter, and as she was then going forward, she scraped along the pier on her port quarter, and finally slipped off, notwithstanding one of her crew, acting under orders from her master, jumped on the pier as she struck it, and attempted to make a line fast, in order to check her headway and to hold her fast to it. Although the sailor got the line over one of the posts, it was ineffective, through the lack of sufficient time, and the ship, after slipping off the pier, went ashore inside of it, some thirty or forty feet."

That the respondents did force the steamship in while the libelant was still moored to the wharf, and thus drive her forward by pressing against her rear line, is entirely clear. In this they were seriously wrong, and to this wrong the consequences which followed may justly be ascribed. The act was very imprudent if not reckless. While I am satisfied the line thus struck and forced forward was detached from the wharf subsequently by the respondents' order, I do not deem this fact important. The consequences would, I think, have been as serious if the line had remained fast there. If it had so remained it must have been broken or the libelant have been forced up against the steamship, and possibly been injured thereby more seriously than she was by grounding.

I think also that the weight of the evidence sustains the charge that the steamship was forced directly against the libelant's side, after the line was cast off, and the momentum of her stern thus increased. I therefore so find the fact. I do not however consider it very important; I believe the consequences would have been the same in its absence. The forcing of the libelant forward by contact with her stern line, and thus requiring it to be cast off, or severing it if it was not, would naturally lead to the result that followed.

Of course it was the libelant's duty to endeavor to save herself, when the line was detached by attaching her stem if practicable to the ice pier. It was all she could do, and it was natural she should seek to do it. I am satisfied from the evidence that she endeavored to do it. In consequence, however, of being forced forward and the rapidity with which her stern moved, the endeavor was unavailing.

The question of damages must go to a commissioner. The claim may be largely exaggerated, but this is matter for future inquiry. The libel is sustained with costs.